## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESTATE OF PATRICIA GRIECO,** by its Administrator, **VINCENT GRIECO, individually,** *et al.,* <br><br> **Plaintiffs,** <br><br> v. <br><br> **NATIONAL MEDICAL CONSULTANTS, P.C.,** *et al.,* <br><br> **Defendants.** | **Case No. 16–cv–01959–MCA–ESK** <br><br><br> **OPINION AND ORDER** |
| **NATIONAL MEDICAL CONSULTANTS, P.C.,** *et al.,* <br><br> **Third-Party Plaintiffs,** <br><br> v. <br><br> **JOSEPH E. COLLINI, ESQ.,** <br><br> **Third-Party Defendant.** | |

**KIEL, U.S.M.J.**

**THIS MATTER** is before the Court on plaintiffs Estate of Patricia Grieco (by its Administrator Vincent Grieco) and Vincent Grieco's (individually) motion to sever or bifurcate defendants National Medical Consultants, P.C. (NMC), Eugene DeBlasio, M.D., and Lael E. Forbes, M.D.'s (collectively, Defendants) third-party claims for contribution and indemnification against third-party defendant Joseph E. Collini (Motion). (ECF No. 149.) Defendants filed oppositions to the Motion. (ECF Nos. 163, 164.) NMC and DeBlasio also cross-moved for bifurcation of the underlying *Schmidt* Action, as defined below, from plaintiffs' first-party claims (Cross-Motion). (ECF No. 164.) Forbes joined the Cross-Motion. (ECF No. 167.) Plaintiffs filed a reply brief in further support

of the Motion and in opposition to the Cross-Motion.   (ECF No. 175.)   Third-party defendant Joseph E. Collini did not file any submission as to the Motion or Cross-Motion.   For the following reasons, the Motion and Cross-Motion are **DENIED**.

## BACKGROUND

As alleged by plaintiffs, "[t]his action arises from the dismissal of an underlying medical malpractice case (*Estate of Grieco v. Schmidt, et. al.*, BER-L-10061-09)" (*Schmidt* Action).   (ECF No. 85 ¶1.)   Patricia Grieco underwent a lap-band bariatric surgical procedure performed by Hans Schmidt, M.D. on November 2, 2007.   (*Id.* ¶¶1, 8.)   After the procedure, she experienced pain, communicated her complaints to Schmidt, and attended a follow-up appointment at his office.   (*Id.* ¶¶10–12.)   She was told the pain was "probably caused by gas."   (*Id.* ¶12.)   On November 9, 2007, Vincent found Patricia unresponsive.   (*Id.* ¶13.)   She was transported to the hospital where physicians determined she had suffered a pulmonary embolism.   (*Id* ¶14.)   On November 19, 2007, Vincent and his family made the decision to terminate Patricia's life support.   (*Id.* ¶15.)

Plaintiffs retained Collini to prosecute a medical malpractice lawsuit against Schmidt and his practice for "negligently causing Patricia's death by failing to provide adequate and necessary post-operative care."   (*Id.* ¶19.)   Plaintiffs also retained NMC—a litigation expert referral service—and DeBlasio (collectively, NMC Defendants) "to provide a bariatric surgery expert to review [p]laintiffs' case, draft a report, and proffer testimony at deposition and at trial in support of [the] case."   (*Id.* ¶¶2, 22.)   Forbes was selected to serve as plaintiffs' expert in the *Schmidt* Action.   (*Id.* ¶24.)

Following motion practice, protracted discovery, and an appeal (ECF No. 123 ¶¶14–46), trial of the *Schmidt* Action was scheduled for October 13, 2015. (ECF No. 85 ¶36.)   Pretrial hearings were set for September 16, 2015 and jury selection was scheduled to commence on September 28, 2015.   (*Id.*)   However,

on September 11, 2015, Forbes indicated her refusal to testify at trial, which allegedly resulted in the dismissal of the *Schmidt* Action with prejudice.   (*Id.* ¶¶ 1, 5, 38.)

Plaintiffs claim Forbes refused to testify because "she had fallen in love with a man who worked on Wall Street and would be moving to the New York City region to be with him." (*Id.* ¶ 39.) Forbes was evidently concerned that testifying against Schmidt would jeopardize her career as a bariatric surgeon. (*Id.*) She had also contacted Schmidt regarding "possible employment" with his practice.   (*Id.* ¶ 40.)   Plaintiffs allege that the dismissal of the *Schmidt* Action was a direct result of Defendants' "failure to adhere to their various and several duties to [p]laintiffs." (*Id.* ¶ 46.) Plaintiffs had sought about $2,290,000 in damages against Schmidt and his practice.   (*Id.* ¶ 47.)

## PROCEDURAL HISTORY

### I.   REMOVAL AND MOTIONS TO DISMISS

This matter has a long and complicated procedural history.   Plaintiffs filed the complaint against Defendants alleging breach of contract and various tort claims on January 8, 2016 in the Superior Court of New Jersey.   (ECF No. 1-1.) The NMC Defendants removed this case to this Court on April 7, 2016 asserting diversity jurisdiction.   (ECF No. 1.)   After extensive motion practice (ECF Nos. 4, 9, 10, 28, 76), plaintiffs filed the first amended complaint on May 22, 2019. (ECF No. 85.)   The amended complaint asserts claims for: breach of contract as to all Defendants (count one); negligence as to all Defendants (count two); professional malpractice as to Forbes (count three); breach of fiduciary duty as to Forbes (count four); gross negligence as to Forbes (count five); and *prima facie* tort as to Forbes (count six).   (*Id.* pp. 10–15, 17.)   Defendants filed motions to dismiss the amended complaint on July 19, 2019.   (ECF Nos. 90, 91.)   While those dismissal motions were pending, this matter was reassigned to me on October 4, 2019.   (Docket entry after ECF No. 97.)

By Order entered on January 31, 2020, District Judge Madeline Cox Arleo granted the dismissal motions in part, dismissing plaintiffs' breach of contract claim and *prima facie* tort claim as to Forbes. (ECF No. 106.)   Therefore, plaintiffs' remaining claims are: breach of contract as to the NMC Defendants (count one); negligence as to all Defendants (count two); professional malpractice as to Forbes (count three); breach of fiduciary duty as to Forbes (count four); and gross negligence as to Forbes (count five).

The NMC Defendants and Forbes filed answers to the first amended complaint on February 14, 2020 (ECF Nos. 109, 110), and a cross-claim against Forbes for contribution and indemnification (ECF No. 109 p.22).   Defendants then moved for leave to file a third-party complaint against Collini on July 14, 2020 and July 15, 2020.[1]   (ECF Nos. 119, 120.)   By Order entered on July 31, 2020, these unopposed motions were granted.   (ECF No. 122.)

## II.   THIRD-PARTY COMPLAINTS AGAINST COLLINI

Forbes filed a third-party complaint against Collini on August 5, 2020, seeking contribution[2] from Collini.   Forbes alleges Collini "departed from the standard of care applicable to an attorney in his position" (count one) and failed "to take all steps to reasonably avoid dismissal of the underlying malpractice

---

[1] Collini filed a separate lawsuit against defendants in the Superior Court of New Jersey on April 26, 2018 (ECF No. 137-4 p.7), seeking to recover the contingent legal fee he would have received had plaintiffs prevailed in the *Schmidt* Action.   (ECF No. 149-2 p.9; ECF No. 125 p.35.)   Collini's lawsuit is state court is stayed, pending resolution of this matter.   (*Id.*)

[2] The brief to Forbes's motion for leave to file the third-party complaint against Collini indicates that "Forbes … seeks leave … to file a Third-Party Complaint against attorney Collini for contribution and/or indemnification based on [Collini's] departures from the standard of care and/or violation of his duty of care to the plaintiffs."   (ECF No. 119-3 p.5.)   However, Forbes's third-party complaint only alleges contribution, and nowhere alleges indemnification.   (ECF No. 123 pp.11–18.)   As to count one, Forbes alleges that "any judgment [for] [P]laintiffs … shall be apportioned by the Court … in accordance with the laws of contribution and apportionment."   (*Id.* p.15.)   As to count two, Forbes alleges that, if she "is held liable to any degree whatsoever for any damages sustained by the plaintiffs … she will be entitled to contribution from" Collini.   (*Id.* ¶78.)

case[,]" which constituted a breach of Collini's fiduciary duty (count two).   (ECF No. 123 ¶¶ 64, 74.)   Among other allegations, Forbes claims Collini failed to take steps to avoid dismissal of the *Schmidt* Action, failed to arrange for a substitute expert, failed to timely request a trial adjournment, and failed to pursue reconsideration of, or to appeal from, the trial court's dismissal of the *Schmidt* Action.   (*Id.* ¶ 74.)

The NMC Defendants filed a third-party complaint against Collini for contribution and common law indemnification on August 7, 2020.   (ECF No. 125 p. 23.)   They allege that Collini "failed to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise." (*Id.* ¶ 59.)   They also claim that Collini breached "his duty and fiduciary duties" to plaintiffs, which proximately caused plaintiffs' damages. (*Id.* ¶ 70.)   It is specifically alleged that Collini failed to communicate and coordinate with Forbes, failed to timely apprise the trial court of Forbes's refusal to testify, failed to arrange for a substitute expert, and failed to pursue reconsideration of, or to appeal from, the trial court's dismissal of the *Schmidt* Action.   (*Id.* ¶¶ 64–67.)

Collini filed a motion to dismiss and to stay discovery in the third-party actions on October 14, 2020 (Collini Motion).   (ECF No. 137.)   The Collini Motion was filed ostensibly as a motion to dismiss "for lack of jurisdiction" (*id.*), though the notice of motion and legal brief indicate that the third-party complaints fail to state claims upon which relief can be granted.   (ECF No. 137 p. 1; ECF No. 137-4 p. 4.)   The Collini Motion argues that Defendants lack standing to assert third-party claims against him for legal malpractice and breach of an attorney's fiduciary duty because no attorney-client relationship ever existed between Defendants and Collini.   (ECF No. 137-4 pp. 8, 23.)   The Collini Motion was fully briefed, but has not yet been decided.   (ECF Nos. 139–142, 144–146.)

### III.   PRESENT MOTIONS

While the Collini Motion was pending, the present Motion was filed (ECF No. 149), and the Cross-Motion followed (ECF No. 164).   Collini did not respond to the Motion or Cross-Motion.   By Order entered on November 30, 2020, I denied the portion of the Collini Motion seeking a stay of discovery in the third-party action.   (ECF No. 159.)

### PARTIES' ARGUMENTS

### I.   SEVERANCE OF THE THIRD-PARTY ACTION

#### A.   Plaintiffs' Position

In support of the Motion, plaintiffs argue the third-party claims for contribution and indemnification (Third-Party Action) are "conceptually secondary" to their claims for negligence, malpractice, breach of fiduciary duty, and gross negligence (First-Party Action), and "will only become viable and justiciable" after plaintiffs obtain a judgment.   (ECF No. 149-2 p.4.)   Plaintiffs also submit that a simultaneous trial of the First-Party Action and Third-Party Action would be "unwieldy, confusing, and inefficient[.]"   (*Id.*)   Plaintiffs cite to New Jersey's Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, and New Jersey case law for the proposition that Defendants' third-party contribution claims against Collini are "available only after [Defendants] have paid a judgment to [p]laintiffs."   (*Id.* p.13.)   As such, plaintiffs submit it would "not make sense" from a "judicial efficiency perspective" to hold a trial of the Third-Party Action prior to the entry of judgment.   (*Id.* p.14.)

Plaintiffs also argue that the First-Party Action and Third-Party Action involve different issues.   On the one hand, plaintiffs' claims pertain to the duty of care owed by an expert and expert referral service, the merits of the *Schmidt* Action, the value of the *Schmidt* Action, and whether Forbes's alleged gross negligence supports recovery of punitive damages.   (*Id.* p.15.)   On the other hand, Defendants' claims pertain to whether Collini committed legal malpractice

in his handling of the *Schmidt* Action, whether he owed and breached a fiduciary duty to plaintiffs, and, if liable, the measure of his fault compared to Defendants. (*Id.*)

## B.      Forbes's Opposition

Forbes argues that the First-Party Action and the Third-Party Action "are inextricably linked and cannot be separated from one another."   (ECF No. 163 p. 4.)   Because Defendants claim that Collini "was the true cause of any loss suffered by the Estate[,]" both actions "will involve the same facts, testimony, witnesses, and evidence[.]"   (*Id.*)   Forbes contends that the First-Party Action and Third-Party Action both involve the following issues: (1) the cause of dismissal of the *Schmidt* Action; (2) whether plaintiffs would have prevailed in the *Schmidt* Action but for dismissal; and (3) the value of the *Schmidt* Action. (*Id.* p. 7.)

Forbes submits that resolution of these issues will involve the same facts, witnesses, and evidence (*id.*), and separate trials would be "a waste of judicial resources, requiring duplicative actions."   (*Id.* p. 4.)   With citations to case law, she also argues that the mere assertion of third-party claims for contribution "does not support … automatically grant[ing] a severance."   (*Id.* p. 11.)   Forbes claims she will suffer prejudice if severance is granted as she would be "required to [participate in] two separate trials [with] largely redundant evidence [*sic*] presented."   (*Id.* p. 16.)   In addition, she argues that plaintiffs' alternate request for bifurcation of the First-Party Action and Third-Party Action should be denied since: (1) they will involve the same testimony and evidence; (2) the issues are not complex such that bifurcation is warranted; (3) bifurcation would discourage settlement of this matter; and (4) a single trial will not cause unnecessary delay. (*Id.* pp. 17–21.)

### C.    NMC Defendants' Opposition

The NMC Defendants' opposition to the Motion advances similar arguments.   (ECF No. 164.)   They submit that, "[s]ince Collini's conduct was critical to what led to the dismissal [of the *Schmidt* Action], the third-party claims should not be severed or bifurcated[.]"   (*Id.* p.7.)   They further argue that Collini's alleged mishandling of the *Schmidt* Action "makes him a joint tortfeasor" which, in turn, entitles them to contribution and indemnification from Collini. (*Id.* p.13.)   As such, the First-Party Action and Third-Party Action "should be decided in one proceeding, not piecemeal, since the fault would arise out of the one same set of facts."   (*Id.*)

## II.   BIFURCATION OF THE *SCHMIDT* ACTION

### A.    NMC Defendants' Position

As for their Cross-Motion, to which Forbes joins, the NMC Defendants seek bifurcation of the *Schmidt* Action from the First-Party Action, and alternatively, request a schedule to determine "how the case within a case will be tried."   (*Id.*) The NMC Defendants seek bifurcation because the "most effective means" by which plaintiffs can show they actually suffered damages is "to prove the case within the case."   (*Id.* p.22.)   They also submit that bifurcation "could conserve judicial resources by potentially eliminating the need for further litigation."   (*Id.* p.23.)   The NMC Defendants claim that no party will be prejudiced by bifurcation.   (*Id.*)   Forbes joins in the Cross-Motion and argues that bifurcation would further judicial economy, avoid jury confusion, and move these actions more expeditiously.   (ECF No. 167 p.3.)

### B.    Plaintiff's Opposition to the Cross-Motion

In response to the Cross-Motion, plaintiffs claim that Defendants' attempt to bifurcate the *Schmidt* Action "is nothing more than an attempt to expend judicial resources [and] delay[] the adjudication of [p]laintiffs' claims and avoid[] any meaningful settlement discussion."   (ECF No. 175 p.6.)   Plaintiffs also

contend a separate trial of the *Schmidt* Action would be inefficient and prejudicial insofar as the First-Party Action would be delayed.   (*Id.* p.10.)   They add that the "reasonable probability of success" of the *Schmidt* Action may be established through expert testimony and reliance on an extensive record.   (*Id.* p.11.)

In further support of their Motion for severance or bifurcation, plaintiffs underscore that resolution of the First-Party Action constitutes a condition precedent to adjudication of the Third-Party Action, which has "nothing to do with" the First-Party Action.   (*Id.* p.4.)   They submit that the First-Party Action and Third-Party Action are "at different stages of litigation."   (*Id.* p.8.)

## APPLICABLE LAW

### I.   SEVERANCE UNDER RULE 21

A court "[o]n motion or on its own, … may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21.   "The decision to sever a claim or to try it separately is left to the discretion of the trial court."   *Rodin Props.-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49 F.Supp.2d 709, 721 (D.N.J. Jan. 25, 1999) (citing *Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409, 412 (3d Cir. 1967)).   Rule 21 is "most commonly used to solve joinder problems," but the rule "may also be invoked to prevent prejudice or promote judicial efficiency."   *Turner Constr. Co., Inc. v. Brian Trematore Plumbing & Heating, Inc.*, No. 07-00666, 2009 WL 3233533, at *3 (D.N.J. Oct. 5, 2009) (citing *Lopez v. City of Irvington*, No. 05-05323, 2008 WL 565776, at *2 (D.N.J. Feb. 27, 2008)).

"Claims that are severed pursuant to Rule 21 'become independent actions with separate judgments entered in each.'"   *Id.* (citing *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 (3d Cir. 1999)).   "Severing claims under Rule 21 is appropriate where the claims to be severed are 'discrete and separate' in that one claim is 'capable of resolution despite the outcome of the other claim.'"   *Turner*

*Constr.*, 2009 WL 3233533, at *3 (citing *Gafney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006)).

"The factors courts consider in determining whether severance is warranted include: (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if severance is granted, and (4) whether the party requesting severance will be prejudiced if severance is not granted." *Ames v. USAA Life Ins. Co.*, No. 18-09865, 2018 WL 5634684, at *1 (D.N.J. Oct. 31, 2018) (citing *Picozzi v. Connor*, No. 12-04102, 2012 WL 2839820, at *6 (D.N.J. July 9, 2012)).   Notwithstanding these enumerated factors, courts have noted, "[w]ith regard to severance decisions, the court is not required to consider anything in particular in reaching its conclusion." *Rodin*, 49 F.Supp.2d at 721.

## II.   BIFURCATION UNDER RULE 42

Rule 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed.R.Civ.P. 42(b).   "When claims are bifurcated under Rule 42, all parts of the action remain 'part of one single action which would result in a single judgment.'" *Turner Constr.*, 2009 WL 3233533, at *3 (citing *White*, 199 F.3d at 145).   "Bifurcating claims [under Rule 42(b)] is appropriate 'where claims are factually intertwined, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other.'" *Id.* (citing *Gafney*, 451 F.3d at 442).

"Courts consider the same factors in deciding a motion to sever under Rule 21 as they do in resolving a motion to bifurcate under Rule 42(b)." *Twin City Fire Ins. Co. v. Ovation Fund Servs., LLC*, No. 18-14944, 2019 WL 1275060, at *2 (D.N.J. Mar. 20, 2019) (quoting *Mulgrew v. Gov't Emps. Ins. Co.*, No. 16-02217,

2017 WL 4540612, at *1 (M.D. Pa. Oct. 11, 2017)).  "No one factor is determinative, and a court must consider the 'overall equities' of a case in ruling on a motion to sever or bifurcate."  *Turner Constr.*, 2009 WL 3233533, at *4 (quoting *Rodin*, 49 F.Supp.2d at 721).

## DISCUSSION

### I.    MOTION FOR SEVERANCE

At this juncture, the Motion to sever or bifurcate the Third-Party Action from the First-Party Action will be denied.   As a preliminary matter, Collini's motion to dismiss the third-party complaints against him was never resolved on its merits.[3]  To the extent the pleadings in the Third-Party Action have not yet been settled, it is premature to evaluate whether severance or bifurcation of the Third-Party Action would be appropriate.   If Collini were to prevail on a renewed dismissal motion, a motion seeking severance or bifurcation of the Third-Party Action from the First-Party Action would become moot.   On the other hand, a dispositive motion that remains pending could delay trial in the First-Party Action and, in such a scenario, severance or bifurcation could be warranted.   It is possible that Collini could simply file a responsive pleading to the Third-Party Action in lieu of a dispositive motion.   I cannot, however, predict how Collini will respond.   Thus, the denial of the Motion will be without prejudice to a renewed motion to sever at an appropriate time.

Plaintiffs reiterate the third-party claims for contribution and indemnification "will only become viable and justiciable" after plaintiffs obtain a judgment in the First-Party Action.  (ECF No. 149-2 p.4.)  However, the argument that third-party claims for indemnification and contribution "are not

---

[3] Collini's motion to dismiss (ECF No. 137)—which sought, in part, the stay of discovery—appears to have been administratively terminated following denial of Collini's request to stay discovery in the Third-Party Action (ECF No. 159). Accordingly, Collini shall be afforded 21 days from the entry of this Order to answer, move, or otherwise respond to defendants' third-party complaints.

ripe because such claims do not accrue until judgment is entered" was specifically rejected in *Gonzalez v. New Jersey*, No. 14-07932, 2019 WL 291162, at *4 n.7 (D.N.J. Jan. 23, 2019).[4]   In *Gonzalez*, District Judge Kevin McNulty concluded "there is no requirement that there must be an entry of final judgment and a recovery of that judgment before a party can file a third-party claim for indemnification or contribution."   *Id.* (citing *United States v. SB Bldg. Assocs., Ltd. P'ship*, No. 08-05298, 2009 WL 2392098, at *2 (D.N.J. Aug. 3, 2009) (granting defendant's motion for leave to file third-party complaint for contribution and indemnification prior to the entry of final judgment on the original complaint)). Moreover, the factors courts consider in deciding whether to sever weigh against severance at this time.

First, the issues sought to be tried separately are not so significantly different from one another that severance or bifurcation is warranted.   While it may be true that the claims asserted in the First-Party Action differ from those asserted in the Third-Party Action, at bottom this lawsuit is about who is responsible for the dismissal of the *Schmidt* Action.   Plaintiffs blame Forbes and the NMC Defendants for Forbes's refusal to testify at the trial of the *Schmidt* Action.   (ECF No. 85 ¶¶ 36, 46.)   Defendants blame Collini, claiming he failed to arrange for a substitute medical expert, failed to pursue reconsideration of, or to appeal from, the trial court's dismissal, and failed to communicate with Forbes in preparation for the trial.   (ECF No. 123 ¶ 74; ECF No. 125 ¶¶ 64–67.)   The allegations and circumstances surrounding the dismissal of the *Schmidt* Action are inextricably intertwined such that "[s]ome version of those facts would necessarily be placed before the fact finder, whether in joint or severed

---

[4] *Gonzalez* was decided in the context of Rule 14 for a "motion to strike or sever," not Rule 21 (motion to sever) or Rule 42 (motion to bifurcate).   Rule 14(a)(4) provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately."   The general principle in G*onzalez* applies equally to the Motion in this case.

proceedings." *Gonzalez*, 2019 WL 291162, at *4. The first factor weighs against severance and bifurcation.

Second, as Defendants contend, the witnesses and documents in the First-Party Action and Third-Party Action, respectively, would almost certainly overlap to some degree. (ECF No. 163 p.4.) At a minimum, Vincent Grieco, Forbes, DeBlasio, and Collini will be called as witnesses in both the First-Party and Third-Party Actions. The parties will likely seek to admit various communications between and among these parties and even third-parties. Indeed, it is difficult to envision a scenario in which witnesses would appear for the First-Party Action and not the Third-Party Action, or *vice versa*. The second factor weighs against severance and bifurcation.

Third, Defendants may be prejudiced by trials in the First-Party and Third-Party Actions if these matters are severed or bifurcated. It could prove inefficient, time-consuming, and costly to subject Defendants to two separate trials with overlapping facts, issues, witnesses, and documents. Moreover, because severed claims "become independent actions with separate judgments entered in each[,]" *White*, 199 F.3d at 145 n.6, severance of the NMC Defendants' third-party complaint against Collini could divest this Court of subject matter jurisdiction over the NMC Defendants' Third-Party Action. *See Turner Constr.*, 2009 WL 3233533, at *6 ("[h]ere, the Court does not have [diversity] subject matter jurisdiction over the severed Third Party Claims because … the Third Party Plaintiff, … and a Third Party Defendant, are New Jersey residents"). According to the NMC Defendants' third-party complaint, NMC is a New York corporation and DeBlasio and Collini are New York residents. (ECF No. 125 ¶¶ 1–3.) Severance would result in the dismissal of the NMC Defendants' Third-Party Action for this Court's lack of subject matter jurisdiction.

From a case management perspective, it would be unwieldy to have Forbes's third-party complaint pending before this Court with the NMC Defendants'

refiled third-party complaint pending and possibly stayed in state court.[5]   Even if the Third-Party Action were bifurcated, as opposed to severed, Defendants could still suffer prejudice for having to try similar issues in two separate trials. Ultimately, "[a] district court has inherent power to 'control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants."   *United States v. Kramer*, 770 F.Supp. 954, 957 (D.N.J. 1991) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).   In the interest of economy of time, effort, and expense, this litigation will not be fractured.   The third factor weighs against severance and bifurcation.

Fourth, plaintiffs will not be prejudiced if the First-Party and Third-Party Actions remain effectively consolidated.   Initially, it remains to be seen whether Collini will pursue dismissal of the Third-Party Action with a renewed motion to dismiss.   There may not be anything left to sever or bifurcate.   Similarly, while plaintiffs appear optimistic about the merits of their case against Defendants (ECF No. 175 p. 9), I cannot predict what findings a trier of fact will make.   The merits of the respective claims and defenses are not before me.   Whether there are viable grounds for Defendants to seek contribution or indemnification from Collini remains to be seen.   Furthermore, I am not persuaded by plaintiffs' claim that simultaneous trial of the First-Party Action and Third-Party Action would be "unwieldy, confusing, and inefficient[.]"   (ECF No. 149-2 p. 4.)   Given the degree of overlap of facts, witnesses, and evidence to be presented in the First-Party and Third-Party Actions, separate trials would actually prove more unwieldy and less efficient than a combined trial that encompasses all issues. The fourth factor weighs against severance and bifurcation.

---

[5] Collini's action for his contingency fee in the *Schmidt* Action remains stayed in state court.   (ECF No. 149-2 p. 9; ECF No. 125 p. 35.)

## II.   CROSS-MOTION TO BIFURCATE

The NMC Defendants' Cross-Motion to bifurcate the *Schmidt* Action from the First-Party Action, to which Forbes joins, will be denied.   I reject Defendants' claim that bifurcation of the *Schmidt* Action would "conserve judicial resources" and "further judicial economy."   (ECF No. 164 p.23; ECF No. 167 p.3.)   A separate trial of the *Schmidt* Action would be inefficient, impractical, and a waste of judicial resources.

Moreover, prioritizing a trial of the *Schmidt* Action in the manner proposed by Defendants will delay adjudication of the First-Party and Third-Party Actions to the prejudice of plaintiffs and possibly Collini.   In lieu of bifurcating the *Schmidt* trial, plaintiffs remain tasked with establishing a "reasonable probability of success" in the *Schmidt* Action as an element of their claims.   This approach will be less prejudicial to plaintiffs and more efficient and cost-effective for all parties.   The NMC Defendants' request for a "schedule" to determine "how the case within a case will be tried" (ECF No. 164 p.7) likewise calls for inefficiency, is premature, and is denied.   Once discovery is completed, a final pretrial order will be prepared to guide the conduct of the trial in this matter.

In considering the "overall equities" of this case, *Turner Constr.*, 2009 WL 3233533, at *4, I find this case has languished for far too long, and must proceed towards a resolution as expeditiously as practicable.  The events and circumstances giving rise to the *Schmidt* Action, First-Party Action, and Third-Party Action date back over 13 years.   Our Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.   Mired by discovery battles, motions, and appeals, nothing about this case suggests that progress towards a final determination on the merits has been "speedy."   Ultimately, I am of the view that "[i]t would be unfair to make plaintiff[s] wait for an indefinite, and quite possibly, lengthy period before [their] claims are heard[.] … It is more efficient to adjudicate the plaintiff[s'] claims

quickly, and provide a remedy for [their] damages, if warranted." *See Cruzan Terraces, Inc. v. Antilles Ins., Inc.*, 138 F.R.D. 64, 66 (D.V.I. 1991).   The *Schmidt* Action will not be bifurcated, and the Cross-Motion is denied.

<u>**ORDER**</u>

Accordingly, and for the reasons stated above,

**IT IS** on this   **5th** day of **April 2021   ORDERED** that:

1.    The Motion (ECF No. 149) and Cross-Motion (ECF No. 164) are **DENIED**.   The Clerk of the Court is directed to terminate the Motion at ECF No. 149 and the Cross-Motion at ECF No. 164.

2.    Collini shall answer, move, or otherwise respond to Defendants' third-party complaints by **April 26, 2021**.

     /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**